<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| iPURUSA, LLC,<br><br>   *Plaintiff*,<br><br> v.<br><br>THE BANK OF NEW YORK MELLON CORPORATION, Q2 STRATEGIES, LLC, DATA BLUE, LLC, AHEAD, JOHN DOE 1-5, MARY DOE 1-5 AND/OR DOE CORPORATION 1-5, and DOE SNOW CORPORATION 1-5,<br><br>   *Defendants*. | Civil Action No. 22-cv-00966<br><br>**OPINION** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

   This case arises out of Plaintiff's development of an automation software and the alleged infringement on its rights to same.  Plaintiff iPurusa, LLC ("iPurusa") sues Ahead, Inc. ("Ahead"), Bank of New York Mellon Corporation ("BNY Mellon"), Q2 Strategies, LLC ("Q2"), and Data Blue, LLC ("Data Blue")[1] for alleged copyright infringement and other common law claims.  Currently pending before the Court are three separate motions to dismiss filed by Ahead (D.E.

---

[1] While Data Blue was named as a defendant and served, D.E. 7, they have failed to appear, answer, or otherwise defend.  On October 12, 2022, the Clerk of Court entered default against Data Blue.  As such, Data Blue has not moved to dismiss the Amended Complaint and no count of the Amended Complaint is dismissed as to them.  Ahead indicates that it is the successor to Data Blue following a merger, but has not sought any relief as to Data Blue being a named Defendant.

17),[2] Q2 (D.E. 33) and BNY Mellon (D.E. 34).  The Court reviewed the parties' submissions[3] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the following reasons, Ahead and BNY Mellon's motions to dismiss are **GRANTED** and Q2's motion to dismiss is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND[4]

iPurusa is a New Jersey limited liability company specializing in software design.  D.E. 16 ("Am. Compl.") ¶¶ 7, 13.  M. Casey Rampersaud is the Managing Member, President, and Creative Director of iPurusa, while Shankar Rampersaud is the Software Architect.  *Id.* ¶ 31.  Plaintiff alleges that "during 2012-2015 Shankar implemented, designed, developed the software application denominated 'Moksha.'"  *Id.* ¶ 21.  iPurusa, however, was not formed until January 12, 2017.  *Id.* ¶ 29.  Plaintiff alleges that it owns a valid copyright in the Moksha software and registered same with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).  *Id.* ¶¶ 83-84.  According to the Certificate of Registration, D.E. 2-1, Ex. C, the "Copyright Claimant" is iPurusa; the date of first publication is February 1, 2012; and the effective date of registration is February 26, 2021.  Am. Compl. ¶ 20.  In March 2017, Moksha was "enhanced" by Shankar "to enable its

---

[2] Plaintiff argues that Ahead's motion is untimely.  D.E. 36 at 29.  The Court ordered that Ahead had until April 8, 2022 to answer, move or otherwise respond to the Complaint.  D.E. 10.  Indeed, this order was made pursuant to a stipulation signed by Plaintiff's counsel.  D.E. 9.  As Ahead's motion was filed on April 8, 2022, the motion is timely.

[3] The submissions consist of Ahead's motion to dismiss (D.E. 17); Plaintiff's opposition thereto (D.E. 36); Ahead's further reply in support (D.E. 37); Q2's motion to dismiss (D.E. 33); Plaintiff's opposition thereto (D.E. 51); Q2's further reply in support (D.E. 56); BNY Mellon's motion to dismiss (D.E. 34); Plaintiff's opposition thereto (D.E. 50); and BNY Mellon's further reply in support (D.E. 55).

[4] The factual background is taken from Plaintiff's Amended Complaint, D.E. 16, and the exhibits attached to the original Complaint, which are relied on therein.  Ahead filed its motion to dismiss on the same day that the Amended Complaint was filed.  The parties agreed that Ahead's motion to dismiss would apply against the Amended Complaint.  *See* D.E. 29.  The Amended Complaint is not a model of clarity, but the Court endeavors to explain the allegations in a clear manner.

users to gain access to more user management features." *Id*. ¶ 35.  As conceived, Moksha's "end-users were to be assignees such as iPurusa and entities like BNY Mellon whose access was to be limited by the control and custody of iPurusa on a per project basis." *Id.*  Plaintiff alleges that "[s]uch limited-use license is evident in the End-User License Agreement embedded in Moksha, to wit: 'iPurusa, LLC grants you a revocable, non-exclusive, non-transferable, limited license to download, install and use the application solely for your personal, non-commercial purposes strictly in accordance with the terms of this Agreement.'" *Id.*

On or about May 1, 2017 Shankar and M. Casey Rampersaud entered into contracts to work as independent contractors of Data Blue, a subsidiary of Ahead. *Id.* ¶¶ 12, 43-46.  On that same date, iPurusa entered into a contract with Data Blue, under which iPurusa would act as an independent contractor of Data Blue and provide engineering services to BNY Mellon. *Id.* ¶ 46. Shankar Rampersaud would be primarily responsible for providing these services. *Id*.

On or about January 1, 2019, iPurusa entered a verbal agreement with Q2 under which iPurusa would act as an independent contractor of Q2 and provide engineering services to BNY Mellon. *Id.* ¶ 49.  Shankar Rampersaud was also hired as an employee of Q2. *Id.* ¶¶ 49, 51, 55. Shankar Rampersaud was assigned to work at BNY Mellon's Jersey City, New Jersey office. *Id.* ¶ 55.  Shankar Rampersaud conducted most of the work for BNY Mellon remotely from his South River, New Jersey office. *Id.*

As part of iPurusa and Shankar Rampersaud's work on behalf of BNY Mellon, Shankar would "contact BNY Mellon's UK employees *who would install* Moksha on all 65,000+ computers at BNY Mellon."[5] *Id.* ¶¶ 48, 52 (emphasis added).  This allegedly took place both while

---

[5] Plaintiff later alleges that infringement "continues to occur on all 95,000+ computers in all of [BNY Mellon's] thirty-five (35) global offices." *Id.* ¶ 76.

Plaintiff worked for Data Blue and while Plaintiff worked for Q2.  *Id.*  Nevertheless, Plaintiff inconsistently alleges that iPurusa's "ownership rights [in the Moksha software] *never were* sold, *shared, licensed*, commissioned and/or assigned[.]"  *Id.* ¶ 46 (emphasis added).

BNY Mellon notes a "Master Services Agreement" ("MSA"), D.E. 34-3, between BNY Mellon and Data Blue, and a "Consulting Services Agreement" ("CSA"), D.E. 34-4, between BNY Mellon and Q2.[6]  The MSA contains the following provisions:

> **7.2** <u>Developed Material</u>. BNYM will own all Intellectual Property Rights in and have the sole right to use all Deliverables and other work product and intellectual property created by Supplier for BNYM under this agreement (collectively, "Developed Material"). Developed Material will be deemed to be works made for hire owned by BNYM upon their creation. To the extent that any such Developed Material is not deemed to be a works made for hire and the property of BNYM by operation of Law, Supplier irrevocably assigns, transfers and conveys to BNYM, without further consideration, all of its right, title and interest (including all Intellectual Property Rights) in and to such Developed Material. Supplier shall execute such documents or take such actions as BNYM may reasonably request to perfect BNYM's ownership of

---

[6] The Court considers the MSA and the CSA because they are integral to the Amended Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original) (citation omitted)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."). The Amended Complaint makes several allegations as to the relevant entities providing "engineering services" to BNY Mellon.  *See, e.g.*, Am. Compl. ¶¶ 46, 49.  The parties do not appear to dispute that the services were provided pursuant to the MSA and the CSA.  In addition, a document is considered "integral to the complaint" where "the claim would not exist but-for the existence of the document."  *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011).  Plaintiff's claims would not exist but-for the MSA and CSA because without those contracts, Plaintiff would have never provided any services to BNY Mellon.  Thus, the MSA and CSA are integral to the Amended Complaint and the Court may consider them at the motion to dismiss stage.

Developed Material. Supplier will promptly disclose the creation of Developed Material to BNYM.

**7.3** <u>Supplier Material</u>. BNYM's ownership of Developed Material that incorporates any material created and owned by Supplier outside this Agreement ("Supplier Material") will be subject to Supplier's ownership of such Supplier Material. Unless otherwise agreed in a separate written license agreement executed by the Parties, Supplier grants to BNYM (and its Affiliates) a non-exclusive, royalty-free, perpetual, irrevocable, transferable, fully paid-up, worldwide license, with a right to sublicense, to use, copy, modify, display, distribute, perform and create derivative works from Supplier Material that is incorporated into any Developed Material or is reasonably required to Use any Developed Material in a cost-effective manner (*e.g.*, tools). Supplier shall obtain BNYM's written approval prior to incorporating any Supplier Material into any Developed Material.

**7.4** <u>Third Party Material</u>. Supplier will not incorporate any third party proprietary materials, information or intellectual property ("Third Party Material") into a Deliverable or other work product to be delivered to BNYM without BNYM's prior written consent.

. . .

**10.3** <u>Non-Infringement</u>. Supplier warrants that (i) Supplier will perform its responsibilities under this Agreement in a manner that does not infringe or misappropriate any Intellectual Property Rights of any third party; (ii) Supplier has all rights and licenses necessary to convey to BNYM the ownership of (or license rights to Use) all Intellectual Property Rights in Deliverables and other materials provided to BNYM; and (iii) no Deliverables or other materials provided to BNYM, nor their use, will infringe or constitute a misappropriation of any Intellectual Property Rights of any third party.

D.E. 34-3.  The CSA contains the following provisions:

6. <u>Proprietary Rights</u>. A. As used in this Agreement, the term "Materials" means (i) all deliverables, and (ii) all data, information, materials, documentation. software, works of authorship, templates, marks, ideas, discoveries, inventions, systems, methods, processes and items that are developed or conceived by either party, or that are disclosed or provided to BNYM, in connection with this Agreement or any Work Statement. BNYM shall retain sole ownership of all Materials, and the Materials shall be considered work made for hire

and made in the course of the services rendered hereunder. To the extent that any Materials may not be considered a work made for hire, all right, title and interest therein is hereby irrevocably assigned to BNYM. All Materials shall belong exclusively to BNYM with BNYM having the right to obtain and to hold in its own name copyrights, patents, applications, registrations or such other protection as may be appropriate to the subject matter, and to any extensions and renewals thereof.

. . .

7. <u>Infringement</u>. Company warrants that all Materials prepared for BNYM hereunder, as well as any and all data, methods, processes, materials and information used in preparation thereof, is original to Company, or is property which Company has the unrestricted right to use, and that no portion of it is either derived from nor infringes upon any patent, copyright, trade secret or other property right of any other person or is subject to any interest, proprietary or otherwise, or any claim of any third party. Company hereby agrees to indemnify and save BNYM harmless from any loss, claim, liability, damage, cost or expense of any kind, including reasonable attorney's fees, to which BNYM may be subjected by virtue of a breach or claimed breach of any of the warranties contained in this Section and further agrees to defend BNYM against any and all such claims.

D.E. 34-4.   Neither the MSA nor the CSA was signed by or mentions iPurusa, Shankar Rampersaud, or M. Casey Rampersaud.  The MSA and CSA likewise do not explicitly mention the Moksha software.

Plaintiff alleges that it "first learned" of possible infringement by BNY Mellon sometime between February 19, 2020 and March 3, 2021.  Am. Compl. ¶¶ 67-73.  In fact, Plaintiff alleges seven distinct dates that it "first learned" of such possible infringement.  *Id.*

On March 3, 2021, iPurusa's agreement with Q2 was terminated by BNY Mellon.  *Id.* ¶ 74.  Plaintiff alleges that "Shankar and iPurusa were locked out of the Moksha software by BNY Mellon which block has stayed in effect since March 3, 2021 despite efforts to recover the software."  *Id.* ¶ 75.  Plaintiff continues that "[u]pon information and belief, BNY Mellon is

providing access to the Moksha despite having no permission to do so," which Plaintiff claims is copyright infringement.  *Id.* ¶¶ 58-59.  Plaintiff also alleges various instances of "copying and accessing" Moksha "without the permission, authority, agreement, acquiesce and/or approval of Shankar, M. Casey and/or iPurusa." *Id.* ¶ 66.

> Plaintiff adds, upon information and belief, that

>> BNY Mellon acted in concert with Q2 Strategies and Data Blue each of whom knew of BNY Mellon and either acted in support and expressly assented to BNY Mellon's misdeeds or tacitly approved of it by inaction in failing to object to and oppose the BNY Mellon misdeeds and/or to notify Shankar, M. Casey and/or iPurusa in a timely manner so they may intervene and stop BNY Mellon.

*Id.* ¶ 67.  Plaintiff further alleges that Q2 and Data Blue "did know of the infringement by BNY Mellon and continue[] to tacitly support it and failed and still fail[] to take any action against BNY Mellon." *Id.* ¶ 68.  Plaintiff indicates that "Defendant's infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiff's copyright, and in conscious disregard for Plaintiff's exclusive rights in the protected Work." *Id.* ¶ 80.

On February 24, 2022, Plaintiff filed a Complaint, D.E. 2, which was thereafter amended on April 8, 2022, D.E. 16.  The Amended Complaint[7] alleges the following counts: Count One - copyright infringement; Count Two - "software piracy" under 17 U.S.C. § 506, the criminal copyright infringement statute; Count Three - quantum meruit; Count Four - tortious interference with business relations and prospective economic advantage; Count Five - civil conspiracy; Count Six - *prima facie* tort; Count Seven - unjust enrichment.

---

[7] The Amended Complaint is unclear as to which counts are asserted against which Defendants. Counts One, Two, and Three refer to a singular and unspecified "Defendant" whereas Counts Four through Seven refer to the plural form "Defendants."  Nevertheless, the Court assumes, as the parties appear to, that all counts are asserted against all Defendants.

The present motions followed, and Defendants Ahead, Q2, and BNY Mellon each seek dismissal of the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  Plaintiff Q2 also seeks dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions and are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true[,]" and grant a plaintiff the benefit of all reasonable inferences arising therefrom.  *Fowler*, 578 F.3d at 210.  The factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  In such a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction."  *Pinker v. Roche*

*Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a *prima facie* case of personal jurisdiction."  *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015).  In such cases, a court "take[s] the allegations of the complaint as true."  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state."  *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute."  *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[B]y accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute.").

## III.  ANALYSIS[8]

### A.  Personal Jurisdiction

Defendant Q2 argues that the Court lacks personal jurisdiction over it.  Federal courts "engage[] in a two-step inquiry to determine whether [they] may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) if so, whether "the exercise of jurisdiction comports with due process" under the Fourteenth

---

[8] As indicated in note 4, the Amended Complaint is not entirely clear.  Moreover, in its opposition briefs, Plaintiff largely fails to address the arguments raised by Defendants, and instead engages in extensive discussion of marginal or inapplicable legal principles.  Plaintiff's submissions also cite to certain facts that do not appear in the record and pose rhetorical questions which do not aid the Court's analysis.

Amendment.  *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)).  "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction."  *Id.* at 259.  Accordingly, the two steps are collapsed into one and courts "ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).  In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'"  *Display Works*, 182 F. Supp. 3d at 172.[9]  "Specific jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation).'"  *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)).  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit."  *Id*. (quoting *Walden*, 571 U.S. at 283 n.6).  If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  If, however, a defendant is solely subject to specific

---

[9] There are other methods of establishing personal jurisdiction, such as consent, waiver, or in-state service.  Those other methods are not at issue.

jurisdiction, the defendant may only face suit in the forum if that suit arises out of or relates to the defendant's contacts with the forum. *Id.*

General jurisdiction may be asserted over an out-of-state entity "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* But for an exceptional case, an entity is "at home" only in "its place of incorporation and principal place of business." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, -- U.S. --, 141 S. Ct. 1017, 1024 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)); *Daimler AG*, 571 U.S. at 137 (noting that an entity's place of incorporation and principal place of business are "paradigm bases for general jurisdiction").

Specific jurisdiction requires the defendant to have "purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). The Third Circuit has developed a three-part test in determining whether specific personal jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. "First, the defendant must have purposefully directed [its] activities at the forum."[10] *Id.* (citation and internal quotations omitted). Second, the plaintiff's claims "must arise out of or relate to at least one of those activities." *Id.* (citation and internal quotations omitted). Third, if the first two requirements are met, the exercise

---

[10] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotations omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

of jurisdiction must "otherwise comport with fair play and substantial justice." *Id*. (citation and internal quotations omitted).

Plaintiff alleges that Q2 is an LLC "organized and existing under the laws of the State of Michigan, with principal place of business located in Brighton, Michigan." Am. Compl. ¶ 10. Thus, Plaintiff does not allege either of the "paradigm bases" for general jurisdiction over Q2, and has not set forth any facts on which the Court could conclude that this is an "exceptional case" such that Q2 is nevertheless "at home" in New Jersey. The Certification of Beth Haiet Meyer, D.E. 52, appears to attempt to establish general jurisdiction over Q2 in New Jersey. The Certification notes that Q2 has a competitor headquartered in New Jersey, describes itself as a "national" recruiter, and is the "executive search firm" for an unrelated New Jersey job listing. D.E. 52 ¶¶ 1-5. None of these facts come close to establishing that Q2 is essentially "at home" in New Jersey.

As to specific jurisdiction, Plaintiff alleges that Q2 entered into a verbal agreement with iPurusa, a New Jersey entity with its principal place of business in New Jersey, which envisioned Shankar Rampersaud providing engineering services to BNY Mellon. Am. Compl. ¶¶ 7, 49. Plaintiff also alleges that Q2 entered into a verbal agreement with iPurusa under which Shankar Rampersaud, on behalf of iPurusa, was to begin working at BNY Mellon's office in Jersey City, New Jersey, as an employee or independent contractor of Q2. *Id.* ¶ 55. By contracting with a New Jersey entity for the provision of services in New Jersey, Q2 purposefully directed its activities at the forum. Plaintiff's claims arise out of and relate to these contacts as Plaintiff alleges that its agreements with Q2 and, by extension BNY Mellon, are the foundation of its claims. Q2 claims in conclusory fashion that exercising jurisdiction over it would not "comport with fair play and substantial justice." D.E. 33-1 at 10. Given Q2's purposeful contacts with New Jersey related to

the facts of this case, the Court disagrees.  Thus, taking the allegations in the Complaint as true and in the absence of an evidentiary hearing, Plaintiff has established a prima facie case of personal jurisdiction over Q2 regarding these claims.  Q2's motion to dismiss for lack of personal jurisdiction is denied.

### B.  Failure to State a Claim[11]

#### 1.  Copyright Infringement

Count One of the Amended Complaint alleges copyright infringement.  The Copyright Act grants the owner of a copyright exclusive rights to the protected material.  17 U.S.C. § 106.  "'To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.'"  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)).  "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth in 17 U.S.C. § 106[.]"  *Id.* at 207.

Ahead and Q2 do not appear to contest the first element.  Instead, they contend that they have not infringed on any of Plaintiff's exclusive rights in the Moksha software.  Ahead (as the parent company of Data Blue) and Q2 argue that Plaintiff has only alleged their "inaction," "tacit approval" and "failure to object" to *BNY Mellon's* alleged infringement, which is insufficient to state a claim against them.  The Court agrees.

---

[11] Plaintiff argues that Ahead and Q2 cannot be dismissed from this matter because the entire controversy doctrine and party joinder principles require that they remain parties to the action. D.E. 36 at 20-26; D.E. 51 at 33-39.  The Court disagrees.  These principles do nothing to save a claim that is insufficiently pled against a particular defendant.

Plaintiff must plead an actionable infringement as to each Defendant and has provided no authority that "tacit approval" or mere "inaction" can serve as the basis for a copyright infringement claim.  Plaintiff relies on *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005), for its claim that a party may be liable for vicarious infringement if they "profit[] from direct infringement while declining to exercise a right to stop or limit it."  That case is inapposite.  First, the Supreme Court expressly noted that it found "no need to analyze separately [plaintiff's] vicarious liability theory."  *Id.* at 930 n.9.  Second, Plaintiff has not alleged that any defendant other than BNY Mellon has profited from the infringement and has not alleged that Ahead/Data Blue or Q2 had any right or ability to prevent BNY Mellon's direct infringement.

Plaintiff also draws a comparison to *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975).  In that case, the Supreme Court noted that "[a]n orchestra or individual instrumentalist or singer who performs a copyrighted musical composition" engages in copyright infringement, as does the sponsor of the event at which the music is performed.  *Id.* at 157.  Ahead/Data Blue and Q2 are not comparable.  None of them are alleged to have directly participated in the alleged infringement in the way that a musician, singer, or sponsor participates in a musical performance (or, in this case, in BNY Mellon's use of the Moksha software).  Indeed, Plaintiff only alleges that these defendants "tacitly supported" the infringement by inaction.  In short, Plaintiff has not sufficiently alleged that Ahead or Q2 violated any of Plaintiff's rights under the Copyright Act.  Thus, Plaintiff has failed to state a claim for copyright infringement against Ahead and Q2.

As to BNY Mellon, the Amended Complaint alleges various instances of direct infringement between 2017 and 2021, and that "[a]ll of BNY Mellon's aforesaid actions of copying and accessing Moksha were without the permission, authority, agreement, acquiescence and/or approval of Shankar, M. Casey and/or iPurusa."  Am. Compl. ¶¶ 61-66.  BNY Mellon contests

both elements—*i.e.*, they claim that iPurusa does not own the Moksha copyright and that there is no infringement on any rights they do possess.  BNY Mellon points to two contracts: the MSA (between BNY Mellon and Data Blue), and the CSA (between BNY Mellon and Q2).  These contracts purport to grant BNY Mellon rights to intellectual property and other work product developed in the course of their relationship with Data Blue and Q2.  D.E. 34-3 at § 7; D.E. 34-4 at § 6, 7.

As to the first element, BNY Mellon argues that iPurusa's copyright registration is not prima facie evidence of the validity of the copyright because it was obtained approximately nine years after the Moksha software was created.  D.E. 34-1 at 13.  The Copyright Act states that "[t]he evidentiary weight to be accorded the certificate of registration made [after five years of the first publication of the work] shall be within the discretion of the court."  17 U.S.C. § 410.  This statute does not, however, transform the Court's role at the motion to dismiss stage.  At this juncture, the Court is obliged to accept Plaintiff's well-pleaded allegations as true draw all reasonable inferences in Plaintiff's favor.  *Fowler*, 578 F.3d at 210.  Thus, the Court accepts Plaintiff's allegation that it validly registered a copyright for the Moksha software.  Am. Compl. ¶ 84; D.E. 2-1, Ex. C.[12]

The next question is whether the MSA and CSA definitively establish, as a matter of law, that iPurusa has no rights in the Moksha software.  The MSA and CSA are not signed by iPurusa or any of its agents and neither contract specifically references Moksha or iPurusa.  *See* 17 U.S.C. § 204 ("A transfer or copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing *and signed by the owner of the rights conveyed* or such owner's duly authorized agent." (emphasis added)).  The

---

[12] The Certificate of Registration was attached as an exhibit to the original Complaint, D.E. 2, and the Court accepts it as an exhibit to the Amended Complaint as well, despite not being attached again.

only rights created under the MSA and CSA are between BNY Mellon and either Q2 or Data Blue. Plaintiff adequately alleges that it owned the copyright to the Moksha software, and BNY Mellon does not definitively show that Q2 or Data Blue acquired rights in Moksha sufficient to allow the transfer of the copyright to BNY Mellon by virtue of the MSA or CSA.[13]  Thus, the Court finds that Plaintiff has sufficiently alleged the first element—ownership of the Moksha software.

BNY Mellon's challenges to the second element fail for the same reason.  Again, BNY Mellon relies on the MSA and CSA to state that Plaintiff granted BNY Mellon an irrevocable license to use Moksha in perpetuity.  Given the lack of any contract signed by iPurusa or its clear agent, and the lack of clarity as to what rights Ahead/Data Blue or Q2 had to transfer an interest in Moksha to BNY Mellon, the Court cannot conclude that, as a matter of law, BNY Mellon was granted an irrevocable license to use Moksha.

Nevertheless, the Court grants BNY Mellon's motion due to an inherent and critical contradiction in the Amended Complaint.  As part of iPurusa and Shankar Rampersaud's work on behalf of BNY Mellon, Shankar would "contact BNY Mellon's UK employees *who would install* Moksha on all 65,000+ computers at BNY Mellon."[14]  Am. Compl. ¶¶ 48, 52 (emphasis added). This allegedly took place both while Plaintiff worked for Data Blue and while Plaintiff worked for Q2.  *Id.*  Nevertheless, Plaintiff inconsistently alleges that iPurusa's "ownership rights [in the Moksha software] *never were* sold, *shared, licensed*, commissioned and/or assigned[.]"  *Id.* ¶ 46

---

[13] While BNY Mellon notes that Q2 and Data Blue warranted that they owned the rights to all "Materials" and "Deliverables" and that they would not infringe on the intellectual property rights of third parties, D.E. 34-3 § 10.3, D.E. 34-4 § 7, these clauses do not establish that Data Blue or Q2 in fact owned sufficient interest in the Moksha software to allow them to transfer same to BNY Mellon.  While BNY Mellon may have claims against Data Blue, Ahead, or Q2 under these clauses, they do not, without more, impact iPurusa's intellectual property rights.

[14] As indicated in note 5, Plaintiff later alleges that infringement "continues to occur on all 95,000+ computers in all of [BNY Mellon's] thirty-five (35) global offices."  Am. Compl. ¶ 76.

(emphasis added).  Thus, on the one hand, Plaintiff appears to indicate that it voluntarily permitted BNY Mellon to use the Moksha software.  But, on the other, Plaintiff contends that it never did so.  Without a reasonable explanation, these two sets of allegations cannot exist side by side.  As a result, the Court finds that Plaintiff has not plausibly alleged copyright infringement as to BNY Mellon.[15]

Count Two of the Amended Complaint alleges "Software Piracy" under 17 U.S.C. § 506, the criminal copyright infringement statute.  Ahead, Q2, and BNY Mellon all seek to dismiss Count Two on the ground that this criminal statute does not include a private right of action.  Plaintiff did not address or defend Count Two in any of its submissions, and the Court was not presented with any authority that a private individual or entity may bring a claim under the criminal copyright infringement statute.  Thus, Count Two of the Amended Complaint is dismissed as to Ahead, Q2, and BNY Mellon for failure to state a claim.

### 2.  Common Law Claims

In Counts Three through Seven, Plaintiff alleges various common law causes of action.  Ahead, Q2, and BNY Mellon all argue that these common law causes of action are preempted by the Copyright Act.  A common law claim is preempted by the Copyright Act under § 301 if

> (1) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103; and (2) the state law seeks to vindicate "legal

---

[15] Although not as glaring a contradiction, the Court also has concerns about the following sets of allegations.  Plaintiff alleges that it "first learned" of possible infringement by BNY Mellon sometime between February 19, 2020 and March 3, 2021.  Am. Compl. ¶¶ 67-73.  On March 3, 2021, iPurusa's agreement with Q2 was terminated by BNY Mellon.  *Id.* ¶ 74.  Plaintiff alleges that "Shankar and iPurusa were locked out of the Moksha software by BNY Mellon which block has stayed in effect since March 3, 2021 despite efforts to recover the software." *Id.* ¶ 75.  Putting aside that a person or entity can only learn of something for the first time on one occasion, Plaintiff appears to be implicitly arguing that unlawful conduct did not occur until March 3, 2021—when Q2's arrangement was terminated by BNY Mellon.

or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106.

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F.Supp.2d 552, 563 (D.N.J. 2002).

Computer software falls "within the type of works protected by the Copyright Act." *Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 479 (D.N.J. 1998).

As to the second element:

> [A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display. . . .   If, under state law, the act of reproduction, performance, distribution or display . . .  will in itself infringe the state created right, then such right is preempted.   But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

*SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1066 (D.N.J. 1989) (citing 1 Nimmer, The Law of Copyright § 1.01[B][1] at 1–12–13 (1984)).   "A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Expediters Int'l*, 995 F. Supp. at 479-80 (citation omitted). Where a "Plaintiff fails to distinguish the underlying factual predicate of his infringement claim with that of his state law claims," the state law claims are preempted. *Winstead v. Jackson*, No. 10-5783, 2011 WL 4407450, at *4 (D.N.J. Sept. 20, 2011).  As a result, the Court reviews whether each common law count is preempted and, if not, whether each is plausibly asserted.

Count Three alleges quantum meruit, and states that Plaintiff performed services for an unspecified, singular "Defendant" and that defendant has "failed and refused to pay for any part of the reasonable value of the Services."  Am. Compl. ¶ 115.  Plaintiff claims that certain *services* (not the Moksha software itself) were provided which were not paid for.  The Amended Complaint,

18

however, appears to focus almost exclusively on the Moksha software.  *Id.* ¶¶ 106-111.  As a result, to the extent that the "services" are simply the access to the Moksha software, the claim is preempted.

While there is another reference to "Services," the services are not delineated.[16]  *Id.* ¶ 112. Quantum meruit is a quasi-contractual, equitable remedy which is "applicable only 'when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust.'"  *New York-Connecticut Dev. Corp. v. Blinds-To-Go (U.S.) Inc.*, 449 N.J. Super. 542, 556 (App. Div. 2017) (citation omitted).  The Amended Complaint alleges this count, at least semantically, only against a singular and unidentified "Defendant."  And, as noted, Plaintiff alleges that it provided unidentified "services" to a defendant which were not paid for.  Am. Compl. ¶ 112. Plaintiff then notes that it "demanded payment from Defendant Q2 Strategies for the Services." *Id.* ¶ 114.  Thus, assuming that Plaintiff also intended to assert a claim for services other than those as to the Moksha software, the claim is not sufficiently pled.  The Court finds that Plaintiff has failed to state a claim for quantum meruit against Ahead, Q2 or BNY Mellon.  Count Three is dismissed as to those Defendants.

Count Four alleges tortious interference with business relations and prospective economic advantage.  This count alleges that Defendants acted maliciously or with wanton and willful disregard to Plaintiff's rights.  *Id.* ¶ 118.  The Court assumes, without deciding, that these additional scienter allegations and requirements mean that the tort is not preempted by federal copyright law.

---

[16]  Moreover, the Court is unable to determine which prior paragraphs from the Amended Complaint are also incorporated into the count because the Amended Complaint states that "Plaintiff incorporates by reference the allegations of paragraphs **Error!  Reference source not found**. through 104 as if more fully set forth herein."  *Id.* ¶ 105.

19

To state a claim for such tortious interference, a plaintiff must allege that

> (1) it had a continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) the defendant knew of such relationship of expectancy; (3) the interference and harm inflicted were done intentionally and with "malice" in the sense of conduct that is wrongful and without justification or excuse; (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of defendant's conduct.

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 493-94 (D.N.J. 1998).  Plaintiff fails to allege any continuing or prospective economic relationship or advantage that was interfered with by Ahead, Q2, or BNY Mellon.  The allegations regarding this count are threadbare recitations of the elements of the cause of action without any connection to the facts, which is insufficient to survive a motion to dismiss.  Am. Compl. ¶¶ 116-21; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff defends this count by stating "[t]he tortious interference would be with Plaintiff's other customers, potential customers, ongoing business relations between Plaintiff and the Defendants that were and ongoingly are prevented[.]"  D.E. 51 at 27.  In the Amended Complaint, Plaintiff only passingly mentioned that its "relationship with present and prospective customers" has been injured without alleging sufficient facts in support.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[L]egal theories set forth in [a] brief are helpful only to the extent they find support in the allegations set forth in the complaint.  '[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)).  Plaintiff has not sufficiently alleged tortious interference against Ahead, Q2, or BNY Mellon.  Count Four is dismissed as to those Defendants.

Count Five alleges a civil conspiracy, pursuant to which the "Defendants acted in concert to illegally use Moksha Automation Suite, thereby infringing Plaintiff's copyrights among other violations."  Am. Compl. ¶ 123.  Under New Jersey law, a civil conspiracy is

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (internal quotations and citation omitted).  This claim possesses an element distinct from the copyright infringement claim; namely, the illegal agreement among the Defendants.  This makes the civil conspiracy claim qualitatively different from the copyright infringement claim, even though they are intertwined.  Thus, the civil conspiracy claim is not preempted.

A conspiracy claim allows a plaintiff to "bring a claim against one who assists another" in an unlawful act.  *Id.* at 178.  Plaintiff alleges that "Defendants acted in concert to illegally use Moksha Automation Suite, thereby infringing Plaintiff's copyrights among other violations."  Am. Compl. ¶ 123.  This count falls short for two reasons.  First, Plaintiff only alleges in conclusory fashion that a conspiracy existed.  Such a threadbare claim, without more, is insufficient to plead that BNY Mellon and Ahead/Data Blue or BNY Mellon and Q2 entered into an agreement to inflict injury upon Plaintiff.  *See Est. of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 244 (3d Cir. 2016) ("A plaintiff must rely on more than his or her own suspicion and speculation to satisfy [the meeting of the minds] requirement.").  Second, Under New Jersey law, "[a] conspiracy is not actionable absent an independent wrong."  *Eli Lilly & Co.*, 23 F. Supp. 2d at 497 (citing *Tynan v. Gen. Motors Corp.*, 248 N.J. Super. 654, 668-69 (App. Div. 1991), *rev'd in part on other grounds*, 127 N.J. 269 (1992)).  Because the Court finds that Plaintiff has failed to plausibly plead any of its

21

other claims, Plaintiff's civil conspiracy claim fails.  *See id.* ("[T]he dismissal of [the plaintiff]'s other causes of action requires dismissal of the conspiracy claim.").  Thus, Count Five is dismissed as to Ahead, Q2 and BNY Mellon.

Count Six alleges *prima facie* tort.  While never specifically recognized under New Jersey law, this cause of action requires an intentional, willful or malicious harm which "fall[s] within the gaps of the law," and only applies where the plaintiff "would have no other causes of action." *Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 469 (2008) (citations omitted).  Assuming this cause of action exists in New Jersey, the claim requires a distinct element, intent, which is not present in the copyright infringement claim.  Thus, the Court assumes, without deciding, that Count Six is not preempted.

The tort, however, is not intended as a "catch-all alternative for every cause of action which cannot stand on its own legs." *Id.* (citation omitted).  The cause of action is only available where "no adequate common law or statutory remedy exists." *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 485 (D.N.J. 1997) (citation omitted).  Thus, assuming such a cause of action does exist, the "[p]rima facie tort should not be invoked when the essential elements of an established and relevant cause of action are missing." *Taylor v. Metzger*, 152 N.J. 490, 523 (1998).  Here, claims for copyright infringement and civil conspiracy are well-established and relevant causes of action that are intended to vindicate the type of harm that Plaintiff alleges.  In light of these more appropriate causes of action, a claim for *prima facie* tort is not available.  Thus, Count Six of the Amended Complaint is dismissed with prejudice as to Ahead, Q2 and BNY Mellon.

Count Seven alleges unjust enrichment.  "Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are

22

generally preempted." *Video Pipeline*, 210 F. Supp.2d at 567 (citing *Weber v. Geffen Recs., Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999)).  Plaintiff does not differentiate this claim in any way from the copyright infringement claim.  Indeed, Plaintiff simply states that "[b]y the acts and activities of Defendants complained of herein" it has been injured, and specifically notes Defendants' infringement on "Plaintiff's valuable right in its software" as the basis for this claim.  Am. Compl. ¶¶ 136-37.  Thus, the unjust enrichment claim is not qualitatively different than the copyright infringement claim and Count Seven of the Amended Complaint is preempted and dismissed as to Ahead, Q2 and BNY Mellon.

IV.   **CONCLUSION**

For the reasons stated herein, Defendant Ahead's motion to dismiss the Amended Complaint, D.E. 18, is **GRANTED**; Defendant Q2's motion to dismiss, D.E. 33, is **GRANTED in part** and **DENIED in part**; and Defendant BNY Mellon's motion to dismiss, D.E. 34, is **GRANTED**.  Counts One, Three, Four, Five, and Seven are dismissed without prejudice.  Counts Two and Six are dismissed with prejudice.  Plaintiff may file an amended complaint that cures the identified deficiencies as to the counts dismissed without prejudice within thirty (30) days.  If Plaintiff does not file an amended complaint within this time, those counts dismissed without prejudice will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated: November 8, 2022

_____
John Michael Vazquez, U.S.D.J.